### Fox v. Lantrip, et al.

(Decided January 15, 1915.)

### Appeal from Hopkins Circuit Court.

1. **Officers—Salary of County Officer—Duty of Fiscal Court.—** Where the salary of a county officer is to be paid by a county, it is the duty of the Fiscal Court to fix the salary of such officer for each year of his term, by a general order made previous to his election.

2. **Officers—Salary of County Officer.—**If the Fiscal Court fails to fix the salary of an officer before his election to the term, it can do so by an order made after his election, or qualification.

3. **Officers—Where Salary of County Officer Is Not Fixed Before His Term—Power of Fiscal Court—Gross Sum Allowed.—** Where the fiscal court has failed to fix the salary of a county officer before his election, by a general order, and for the first year of his service allowed him a gross sum, a like sum will be considered his salary for each of the years of his term thereafter, and the fiscal court has no power to increase or lessen it for any of the succeeding years of his term, provided such sum is within the maximum and minimum amounts provided by law.

4. **Officers—To Ascertain Salary of School Superintendent, Where Gross Sum Is Allowed for First Year.—**Where there has

been no order made by the fiscal court fixing the salary of the County Superintendent of Schools before his election, and he is allowed by said court a gross sum for the first year's service of his term, the gross sum divided by the number of pupil children reported by the census in the county, will ascertain the amount per capita for each pupil child, and will be a basis upon which to ascertain his salary for the succeeding years of his term.

5. Fiscal Courts—Order of Fiscal Court.—An order of a Fiscal Court which was never read publicly by the clerk, nor signed by the county or presiding judge, with the approval of the justices present, is not a valid order for any purpose.

H. F. S. BAILEY for appellant.

MILTON CLARK and C. A. DENNY for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

On the 24th day of August, 1914, the appellees, G. W. Lantrip, and others associated with him, as plaintiffs, filed a petition in ordinary in the Hopkins Circuit Court against the appellants, A. J. Fox, the County Judge of Hopkins county, and the justices of the peace of said county, in which they substantially alleged that the appellant was the School Superintendent of Hopkins county for the term beginning on the first Monday in January, 1910, and ending on the first Monday in January, 1914; that at the regular term of the Hopkins County Fiscal Court, held in October, 1909, and on the 19th day of October, 1909, the fiscal court, by an order duly made and entered in court at that time, fixed the salary of the school superintendent of the county for the ensuing four year term, which was held by the appellant, at ten cents per pupil child, as shown by the school census reports for each year in the county; that at the April term, 1910, of the fiscal court, the fiscal court made an order changing the salary of the county school superintendent from ten cents per pupil child to $1,500.00 per year, and thereafter the appellant was paid for his services as superintendent of schools the sum of $1,500.00 per year for the years 1910, 1911, 1912, and 1913; that the $1,500.00 exceeded the amount to which the superintendent's salary amounted to at ten cents per pupil child for each of the years as follows, namely: For the year 1910, $473.20; for the year 1911, $452.60; for the year 1912, $450.80; and for the year 1913, $467.80; making in all the sum allowed and paid to him by the fiscal court for

said years the sum of $1,844.40 in excess of what his salary would have amounted to at ten cents per pupil child for the years in accordance with the order made on the 19th day of October, 1909, fixing the salary of the school superintendent. The petition further alleges that each of the plaintiffs was a citizen and taxpayer of Hopkins county, Kentucky; that the citizenship of the county was numerous, and asked that they be permitted to sue for and on behalf of all of the taxpayers of the county; that they had theretofore demanded in writing of the fiscal court that it sue the appellant for the sums of money which, as alleged, he had received from the county in excess of what his salary amounted to at ten cents per pupil child, but that said court had failed and neglected to cause such a suit to be instituted, and had made no effort to collect said sums, or any of them, from the appellant, and prayed a judgment against the appellant for the sum of $1,844.40, with interest, and for their costs. They did not ask for any recovery against the county judge or the justices of the peace.

Thereafter the appellees filed two amended petitions, the first of which seems to have been filed for the purpose of making Hopkins county a party defendant, and the second amended petition only set out and alleged the amount of taxable property owned by each of the plaintiffs in Hopkins county.

The appellant entered a general demurrer to the original petition, and as amended, which demurrer being overruled by the court, the appellant excepted. We concur with the opinion of the circuit court in overruling the demurrer, for, while in the original petitions and in the amendments much is stated which is not necessary in order to constitute a good cause of action against the appellant, but the things alleged therein do make a good cause of action on the part of the plaintiffs against the appellant, A. J. Fox.

No recovery was asked against any of the defendants except Fox, in either of the amended petitions, and neither of the defendants appeared or entered any defense to this action, except the appellant. In due course of time the appellant filed his answer, in which he traversed the allegations of the petition, and denied that he had wrongfully, or unlawfully, or without warrant of law, drawn or received from the public funds of the

county the sum of $1,844.40, or any other sum, as salary for his services as county school superintendent; or that at the regular October term, 1909, his salary had, by an order of the fiscal court of Hopkins county, been fixed for the ensuing four year term to which he was elected at the sum of ten cents per pupil child within the school age, as shown by the census reports for each year, or that any order had been made or entered at the October term, 1909, of the fiscal court fixing his salary at any sum, or that at the regular April term, 1910, of the fiscal court of the county it had attempted to change the salary of the county school superintendent from ten cents per pupil child to $1,500.00 per year, or any other sum, or that he drew from the county funds as salary the sum of $473.20, or any other sum, in excess of his salary for the year 1910, or for either the year 1911, 1912, or 1913, or that he drew from the treasury, or was paid by the county, as his salary, the sums alleged in the petition, or any other sum, in excess of his salary fixed by law for either of said years. He further denied that there was any excess of salary paid him amounting to $1,844.40, or any sum, and denied that the fiscal court had by an order fixed the amount of his salary previous to his election, at the October term, 1909, or at any other time, or that an order had thereafter been made changing the order fixing his salary, or that any order was thereafter made, fixing the salary of the county superintendent, until November 16, 1909. This was the substance of the allegations contained in the first paragraph of the answer, which seems to have made an issue, and upon which the court was obliged to have heard proof before rendering any judgment against the appellant. By the second paragraph of the appellant's answer, the appellant alleged that he was elected school superintendent at the regular November election, 1909, for a four year term, beginning on the first Monday in January, 1910; that he qualified as required by law, and held the office during said term; that at the time of his election the fiscal court of the county had not made any order fixing the salary which he should receive for his services for the years composing his term, but that the order was made on the 16th day of November, 1909; that the fiscal court met on October 19th, 1909, and held a session upon that day, but that there was no order made or entered by them

at that time; that the clerk of the county court, who is also clerk of the fiscal court, made minutes of the proceedings in pencil on the temporary minute book of the Hopkins County Court, and that such minutes were never read in open court, or approved or signed by the county judge in the presence of the other members of the court; that the court then adjourned to meet on November 6th, 1909, and that on or about the last named day the clerk of the fiscal court for the first time entered the orders of the meeting held on October 19th on the order book of the court, and in doing so, entered the order fixing the salary of the school superintendent different from the minute made and different from the resolution of the court; that the only minute the clerk made with reference to the salary of the school superintendent on October 19th, 1909, was as follows: "Ordered that Supt. salary be fixed for yr. 1910," and that the clerk thereafter, about November 16th, 1909, wrote out upon the order book an order with reference to his salary in which the salary of the county superintendent was fixed at ten cents per pupil child reported in each year in the school census as his salary per annum, and further alleged that the record of the meeting of the court on October 19th, 1909, did not show by whom the court was held; that when court met pursuant to adjournment on November 16, 1909, the fiscal court then made an order, which was entered, read, approved and signed, by which it set aside the order spread upon the order book by the clerk as if made on October 19, 1909, and then proceeded, by an order duly made, entered, approved and signed, to fix the salary of the school superintendent for the ensuing four years, and that this defendant received said salary for each of the four years, and no more.

There are some other allegations in the answer which we do not deem necessary to mention, as they constitute no defense to the action.

The appellees demurred generally to the answer of the appellant, and, upon a hearing, the court sustained the demurrer, and the defendant declining to plead further or amend his answer, and announcing his purpose to abide by his answer, the court rendered a judgment against the appellant in favor of the appellees, for the use and benefit of Hopkins county, for the sum of $1,844.40, and the appellees' costs expended.

The appellant took proper exceptions to the judgment of the court sustaining the demurrer, and to the judgment of the court adjudging that the appellees recover said sum against him, and prayed an appeal to this court, which was granted.

Neither the appellees nor the appellant filed with their pleadings copies of the orders referred to therein, but no objection was made to this in the court below, nor was any motion made by either party requiring them to be filed with their pleadings.

It seems that the only question for determination by this court is as to whether or not, assuming the allegations and denials in defendant's answer to be true, they constituted a defense to the things alleged in the petition.

Section 161 of the Constitution provides as follows: "The compensation of any city, county, town, or municipal officer shall not be changed after his election or appointment, or during his term of office; nor shall the term of any such officer be extended beyond the period for which he may have been elected or appointed."

Section 235 of the Constitution is as follows: "The salaries of public officers shall not be changed during the term for which they were elected; but it shall be the duty of the General Assembly to regulate by a general law, in what cases and what deductions shall be made for neglect of official duties. This section shall apply to members of the General Assembly." The contention of appellant that the office of school superintendent, not being one created by the constitution, that these constitutional provisions do not apply to him. The foregoing provisions are very broad in their terms, and the school superintendent is a county officer, and this court has held in the cases of Piercy v. Smith (117 Ky., 990), and Breathitt County v. Noble (117 S. W., 777), that these sectons of the Constitution are applicable to the office of school superintendent. There can be no question that it applies to and controls the compensation of all county officers, and an officer is any one who is "invested with some portion of the function of the government to be exercised for the public benefit." City of Louisville v. Wilson (99 Ky., 599.)

In construing these sections of the Constitution, supra, this court has held that where it devolves upon the fiscal court of a county to fix the salary of any county officer, it is the duty of the court, by an order, entered

before the election of the officer, to fix the salary for each of the years during the term for which he holds the office, but, if the fiscal court should fail to do so, it may, by an order, fix the salary after the qualification of the officer, and while he is in office, and we know of no reason why, if the salary of an officer had not been theretofore fixed by an order of the court, it should not do so after his election and before his qualification. In the following cases this court has held that the salary may be fixed after the officer has qualified and after the commencement of his term, viz: Marion County v. Kelly (112 Ky., 831); Barrett v. City of Falmouth (109 Ky., 151); Jefferson County v. Waters (114 Ky., 48); Butler County v. James (116 Ky., 575). It has also been determined by this court that when the salary of a county officer for the ensuing years of his term is fixed by an order of the fiscal court previous to his election, that the fiscal court has no power to change his compensation, making it either greater or less, after his election. This seems to be a mere declaration of the plain provisions of the sections of the Constitution above quoted. Further construing this section, this court has held that where, after the election and qualification of an officer, and where the court has not theretofore fixed his salary by an order, and it proceeds to make an order paying him for his first year's services in his term of office, that should be considered as the salary fixed for him and it cannot, for the following years, be either added to or lessened in amount. (Butler County v. James, 116 Ky., 575.) It was likewise held by this court in the case of Breathitt County v. Noble, *supra,* that, in as much as the statute, Section 4419, Kentucky Statutes, 1903, provides that the salary of a county superintendent shall not be less than eight cents nor more than twenty cents per pupil child reported in the county, and where the fiscal court, not having fixed the salary of the county superintendent previous to his election, shall, by an order made after his election, allow him a gross sum for his services for the first year of his term, the basis of his salary for the future years of his term can be ascertained by dividing the sum by the number of pupil children in the county, and thus find the amount per pupil child allowed him, and in that way ascertain the amount per pupil child which he shall receive as his salary, provided the salary in gross is not less than the

minimum nor more than the maximum sum, which, by law, a superintendent of schools may be paid as his salary. The maximum sum which could lawfully be paid to a school superintendent for his salary at the time of the election and qualification of appellant was $1,500.00. (Section 4419, Kentucky Statutes, 1903 edition.)

The answer of the appellant fails to deny that he was paid the sum of $1,500.00 a year as his salary, and, taking the other allegations in the petition, which are undenied, it is apparent that said sum did not exceed twenty cents per pupil child in said county for each of the years the appellant held the office of school superintendent, and hence the fiscal court could lawfully allow and pay appellant not exceeding said sum per year as his salary.

If the fiscal court had not, by an order made previous to his election, fixed the amount of the salary which he should receive per year for his entire term, then the fiscal court was within its authority when it allowed him the sum of $1,500.00 for the first year of his term, and did not allow him more than that for each of the ensuing years of his term. The only question then to be determined from the answer is as to whether or not the fiscal court had, before the election of appellant, by a general order, fixed his salary for each year of his term.

The fiscal court is one of the courts provided for in the Constitution of the State, and is given charge and direction of the fiscal affairs of the county. By the statutes of this State it is required to be a court of record, and it speaks only by its records, and cannot do otherwise. A mere meeting together of the persons composing the membership of the fiscal court, and determining in parol as to what they are to do and not to do, is not an act of said court. (Talbot v. Marshall, 2 Mar., 603; McDonald v. Franklin Co., 125 Ky., 205, 100 S. W., 861.)

Section 1842 of the Kentucky Statutes is as follows: "Before each adjournment the minutes of the proceedings of the said court shall be read publicly by the clerk of the court, and corrected if necessary, and the same shall be signed by the county judge or the presiding judge, with the approval of the justices of the peace present when the court was held."

Section 1843 of the Kentucky Statutes is as follows: "No minute or order of the fiscal court shall be valid until the same shall be read and signed as aforesaid, nor unless the record shows by whom the court was held."

186 KENTUCKY REPORTS. [Vol. 162.

The answer of the appellant discloses that a meeting of the fiscal court was held on the 19th day of October, 1909, and at that session no minutes of its proceedings were publicly read by the clerk of the court, neither were they corrected, neither were same signed by the county judge or the presiding judge, with the approval of the justices of the peace present when the session was held, neither does the record of that meeting show by whom the court was held. The memorandum made by the clerk in pencil on his minute book is as follows: "Ordered that Supt. salary be fixed for yr. 1910," is not an order for any purpose and only shows that the court at that time resolved to fix the salary of the superintendent of schools, either then or at some future time. This memorandum was not read publicly, nor signed by the county judge in the presence of the justices present. If there was no order showing who composed the court at that time, and the court did actually adjourn at that time and any minutes made of its proceedings were neither read nor signed, as required by statute, *supra*, it is very apparent that no valid act was done by the court at that time.

The answer of the defendant alleges that the court was in regular session on the 19th day of October, 1909, and adjourned to meet on the 16th day of November, 1909, and that both meetings were a part of the same term, and that on the 16th day of November, 1909, or previous thereto, the clerk wrote out an order on the order book of the fiscal court fixing the salary of the school superintendent at ten cents per pupil child in the county per year, but this act of the clerk could not be construed as an act of the court until said order was read over publicly, approved and corrected, if need be, and signed by the county judge in the presence of the justices of the peace present who made the order. It does not appear that it was ever approved in this way, but, instead, the court at its adjourned term, November 16th, 1909, refused to approve said order, and made an order setting it aside, and thereupon, for the first time, made an order fixing the salary of the school superintendent at $1,500.00 per year for the ensuing four years. In fact, it does not seem that there was any necessity for the court, at its term held on the 16th day of November, to make any order rescinding or setting aside the order put upon the order book by the clerk, since it had no validity.

It was held in the cases of Dye v. Knox (1 Bibb, 575), and in Garrard County v. McKee (11 Bush, 234), that county courts "have power to adjourn from day to day, but they are not required to adjourn each day when they cease to transact business; they may, if they see proper, treat the entire time they are in session as one day, and meet and sign one adjourning order." If a mere minute was made by the clerk of the so-called order of the court made on the 19th day of October, 1909, and was never read over, approved, nor signed by the county judge or presiding judge in the presence of the justices, but was thereafter written out by the clerk upon the order book, and at the adjourned term of the court, held on November 16, 1909, it was not approved, but, instead, was set aside, and corrected and an order then entered fixing the salary of the superintendent, it would be immaterial whether the court adjourned on October 19th and entered an adjourning order at that time and met again on November 16th, or whether they failed to adjourn on October 19th, and treated that day and November 16th as one day, as the order was not entered, read, approved, or signed on October 19th, and could have no validity until same was done, and the reading, disapproving, and correcting it, or setting it aside, as alleged in the answer, and making an order to conform with the wishes of the court on the 16th day of November, can only be considered as an act done on November 16th, which was after the election of appellant, and seems, from the allegations of the answer, to have been the only valid order made upon the subject. The answer, however, alleges that there was an adjournment of the court upon October 19th, and, if such was the case, the order written by the clerk, as if made on October 19th, has no validity whatever. If no adjourning order was made of the court on October 19th, and said day and November 16th were considered as one day, still the order, if any, made on October 19th, and thereafter spread upon the records by the clerk, although it may have been in the terms directed by the court, it still lacks the essentials necessary to its validity, in that it was never approved by the justices composing the court, nor signed by the presiding judge.

An order or a judgment of a court of record never has any validity until it is signed by the authority designated by law for that purpose. (Commonwealth of

Kentucky v. Chambers, 1 J. J. Mar., 108; May v. Duncan, 157 Ky., 586; Interstate Petroleum Co. v. Farris et al., 159 Ky., 820.) Assuming that the allegations and denials of the answer are true, and taking them altogether, there was no order made by the fiscal court fixing the salary of the appellant until after his election, and until the 16th day of November, 1909, and that on that day the fiscal court did make an order fixing his salary for each year of the term, within the minimum and maximum amounts allowed by law, and if the pay- ment to him of said $1,500.00 per year did not in any one or more of the three last years of his term increase the amount paid him per pupil child over the amount he received per pupil child for the year 1910, his answer presents a complete defense to the petition, but if, on account of the change in the number of pupil children in the county, the $1,500.00 amounted to more in either of the three last years of his term than the amount paid him per capita of the pupil children for the year 1910, then his answer presents a defense against the recovery against him of such part of the amounts sued for as may be necessary to make his compensation per pupil child the same as during the first year of his term.

It is, therefore, adjudged that the judgment appealed from be reversed and this cause is remanded to the court below with directions to set aside the judgment, and the judgment sustaining the demurrer to the answer of ap- pellant, and to overrule said demurrer, and for proceed- ings in conformity to this opinion.