### UPTON v. WHITLEY COUNTY, by PEACE.

Court of Appeals of Kentucky.
Dec. 19, 1952.

As Modified on Denial of Rehearing
March 27, 1953.

W. L. Rose and Joe Feather, Williamsburg, for appellant.

Shumate & Shumate, Irvine, for appellee.

STEWART, Justice.

During the period from the first Monday in January, 1942, to the first Monday in January, 1946, appellant, C. B. Upton, served his second term as county attorney of Whitley County. He was re-elected for a third term at the November election, 1945, and this term commenced the first Monday in January, 1946. On November 12, 1945, as shown by an exhibit filed with the petition, the fiscal court entered an order allowing Upton the sum of $1000, "for services and expenses rendered (by him) outside (his) duties for the past four years." This allowance was in addition to his regular salary for the second term of $1500 per annum. On October 2, 1945, after Upton's nomination but before his election, the fiscal court increased the salary of the county attorney from $1500 per year to $2400 per year, effective for the ensuing term.

This action was instituted by a taxpayer on behalf of Whitley County to recover the $1000 allowance made by the fiscal court on November 12, 1945, and the $900 per year excess or the total sum of $3600 received by the county attorney for the 4-year term beginning the first Monday in January, 1946. It is contended both amounts have been illegally received by Upton in his official capacity.

The lower court entered a judgment in favor of the county for the retroactive allowance of $1000 to Upton for services and expenses during the second term, but denied recovery for the increased salary paid to him during the third term. Upon a former appeal to this Court the judgment was reversed because the taxpayer had not made a demand upon the fiscal court to prosecute the action. See Upton v. Whitley County, 310 Ky. 174, 220 S.W.2d 375. Upon a return of the case to the lower court this formality was complied with, but the fiscal court clearly manifested no disposition to act upon the taxpayer's demand after the lapse of a reasonable length of time and we construe this inaction as the equivalent of an affirmative refusal to act.

When this action was commenced on September 6, 1949, a jurisdictional question was raised as to the right to maintain the second suit upon the ground that the previous action was still pending. Thereafter the mandate of this Court was filed and the first action was dismissed. Thereupon the jurisdictional plea was overruled. Appellant then filed a general demurrer to the petition, which was sustained to the paragraph seeking a recovery of the salary increase, but which was overruled as to the amount allowed for extra services and expenses. An answer and amended answer were filed alleging that appellant had made a number of trips on behalf of the county in connection with the handling of its various fiscal affairs and that the amount allowed was less than the actual expenses incurred. A general demurrer was sustained to the answer and amended answer and judgment was entered for the county for $1000. Upton appeals from the judgment against him and the taxpayer cross-appeals from that portion of the judgment denying recovery for the salary increase.

Preliminary to a determination of the rights of the parties on the merits we shall dispose of a procedural matter urged in the briefs. It is insisted by appellant that his plea to the jurisdiction to maintain the second action should have been sustained because the first action was still pending at the time the plea was interposed. This argument is without merit, because we have ruled many times that an objection that a former action is pending is removed by the dismissal or discontinuance of the first action, even if such dismissal or discontinuance comes after the plea in abatement. Citizens' Nat. Bank of Danville v. Forman's Assignee, 111 Ky. 206, 63 S.W. 454, 757, 56 L.R.A. 673; Wilson v. Milliken, 103 Ky. 165, 44 S.W. 660, 42 L.R.A. 449.

To support his claim for a reversal, Upton alleged that, between 1942 and 1945, he made some sixty-nine trips out of the county, mainly to assist in refunding the county's bonded indebtedness, to resist blanket assessment increases and to secure road improvements for the county. He pleaded he had been generally authorized by the fiscal court to make these trips, but no statement in any instance was ever presented to the fiscal court itemizing such expenses. He also averred he did not collect for his expenses and services on the occasion of each trip for the reason that the county had never been financially able to pay him at an earlier date.

Section 161 of the Kentucky Constitution provides thus in part: "The *compensation* of any city, county, town or municipal officer shall not be changed *after his election* or appointment, *or during his term of office*; * * *." The fiscal court order upon which Upton relies recited in substance that the allowance was for "services and expenses rendered" by him during his second term. But it is argued that the payment was in reality for expenses alone and that the money received by him for such is not prohibited by the foregoing constitutional provision, even though the allowance was made during his third term. However, since the fiscal court of a county speaks through its records, evidence aliunde is not competent to show that the court did something not shown by or at variance with its records. Kozee v. Commonwealth, 139 Ky. 66, 129 S.W. 327. In so far as the order was an attempted payment for extra services or amounted to additional salary it was clearly violative of the foregoing section of the Constitution and therefore void,

because it represented a change in Upton's compensation during his term of office after his salary had been legally fixed. · Upton did not establish what amount embraced in the order was for expenses and what was for services, so that it is impossible to separate the valid from the invalid portions of the order, assuming any part of the order to be valid. Moreover, we believe the allowance was no more than an attempt to increase Upton's compensation during his term of office and, since this was the case, we conclude that the lower court properly allowed the county to recover the $1000 from him.

On the cross-appeal, the argument is advanced that the order attempting to increase Upton's salary was void inasmuch as it directly contravenes KRS 69.250 which reads as follows: "The county attorney shall receive a reasonable annual salary to be fixed by the fiscal court not later than the first Monday in May in the year in which county attorneys are elected. The salary shall be paid by the county in equal monthly installments."

On the 3rd day of April, 1941, the county attorney's salary, as shown by the record, was by order of the fiscal court fixed at "$1500.00 per annum, payable in monthly installments of $125.00 each for and during a period and term of four years beginning the first Monday in January, 1942, and extending to the first Monday in January, 1946." It is thus apparent that the salary of the county attorney under this order terminated at the end of the foregoing term, and we have upheld the fixing of a county attorney's salary after his election in those cases where the salary under a previous order did not carry over but expired before the new term began. In the case at bar it is clear that the county attorney's salary had not been established for any future years before October 2, 1945, the date Upton's compensation for his third term was set by court order, and it is well-settled that when the fiscal court has failed to fix the salary of a county officer before his election, the constitutional provision does not prohibit the court from entering an order fixing his salary after his election.

KRS 69.250 was enacted as Chapter 131 of the Acts of the General Assembly of 1932. On April 27, 1943, this Court handed down the opinion of Asher v. Wilson, 294 Ky. 110, 171 S.W.2d 17, 18, which we take to be conclusive of the salary issue in this case. Wilson was elected county attorney of Bell County in November of 1941 for a 4-year term commencing January 5, 1942. The county attorney's salary for the previous 4-year term beginning the first Monday in January, 1938, had been fixed at $2400 per annum. No subsequent order pertaining to the salary of the county attorney was made until after Wilson's election. On December 3, 1941, an order was entered fixing the county attorney's salary for the 4-year term commencing January 5, 1942, at $3000. Asher, the county treasurer, being uncertain as to the validity of the increase in salary, withheld payment to Wilson, and suit was then brought by Wilson for a mandatory injunction to compel payment of his salary. Said the Court in this case:

"But, when the fiscal court has failed to fix the salary of a county officer before his election, the constitutional provision does not disable the court from entering an order fixing his salary after his election. The Constitution (Section 161) does not provide that the salary of the officer shall not be fixed after his election, but only that it shall not be changed. It has been the settled practice to fix the salaries after the election when they had not been established by previous action. * * *"

Upon the authority of this case, we are of the opinion that the entry of the order dated October 2, 1945, setting Upton's salary at $2400 per annum was valid.

As a postscript to this opinion it should be pointed out that effective at any time after June 30, 1950, as provided by KRS 64.730, Sec. 32 of Chap. 123, Acts of General Assembly of 1950, if the fiscal court fails to fix the salary of the county attorney, or of any other officer whose compensation it is required by law to fix, by not later than the first Monday in May in

the year in which such officers are elected, the salary of the official or officials whose salary is not fixed at such time shall be the same as that paid for the preceding term.

Wherefore, the judgment is affirmed on the appeal and on the cross-appeal.