The Honorable David Dunn State Representative Post Office Box 208 Forrest City, AR
Dear Representative Dunn:
I am writing in response to your request for an opinion on the following:
I would like to request a formal Attorney General's opinion concerning several questions pertaining to a recent City Council meeting that occurred in Brinkley. During the January 30th meeting, the issue of the new Mayor's salary was brought up. This issue was on the agenda for discussion only. However, the new Mayor felt that her budget approval was being held up due to the fact that she would like her salary to be increased from $6,556.00 to $44,500.00 a year. She is also requesting that the job of Mayor be considered full time instead of a part time job. During the meeting, she asked for a motion to approve her salary, which received a second. After much debate a vote was taken with a tie 3-3 vote taking place. The Mayor then voted, due to the tie decision, and her motion was approved. Below are the specific questions I would like answered:
Is it proper for a mayor to call a vote on an issue that was specifically on the agenda for discussion only, specifically when the issue was of personal financial interest to the mayor?
Was it proper to pull a single item, such as the salary of the Mayor, from the budget and call a vote for just that single item?
Was it proper for the Mayor to then vote in order to break the 3-3 deadlock vote of the city council?
What is the fiscal responsibility of the mayor to the citizens? The city council did not approve the mayor's salary, the mayor approved this salary by casting her vote as an ex-officio member.
RESPONSE
With respect to your first question, in my opinion, absent local procedural rules, the standard rules of parliamentary procedure do not prohibit action on an agenda item that has been designated "discussion only." Furthermore, in my opinion, it was improper for the mayor to preside over the city council in the matter described in your request. With respect to your second question, I am unable to address this issue because of the factually specific determinations that must be made in determining the propriety of parliamentary action. With respect to your third question, while a mayor in a city of the first class with a mayor-council form of government may vote any time his or her vote is needed to pass a motion, bylaw, resolution, order, or ordinance pursuant to A.C.A. § 14-43-501(b)(1)(B) (Supp. 2005), in my opinion the situation described in your request constitutes a conflict of interest and the mayor's vote would likely be found a nullity by a court. The fourth question posed appears to be a restatement of portions of the first and third questions and, as such, I refer to my responses to Questions One and Three.
Question One: Is it proper for a mayor to call a vote on an issue that was specifically on the agenda for discussion only, specifically when the issue was of personal financial interest to the mayor?
In my opinion, absent local procedural rules, there is no prohibition on calling for a vote on an issue that had been placed on an agenda for "discussion only" under traditional rules of parliamentary procedure. However, under the common law conflicts of interest standards described below, it is improper for a mayor to preside over the city council while an issue of direct pecuniary interest to the Mayor is being deliberated.
The Arkansas Code contains sparse information regarding the conduct of city council meetings. Arkansas Code Annotated § 14-53-501 specifically states:
[The city council] shall determine the rules of their proceedings and keep a journal of their proceedings, which shall be open to the inspection and examination of any citizen.
Id. at (a)(2)(C)(i) (Supp. 2005). I have not been provided with any information regarding whether the City of Brinkley has adopted any local procedural rules governing the conduct of its city council. As consistently noted by my predecessors, in the absence of statutory guidance or local procedural rules, the general rules of parliamentary procedure, such as Robert's Rules of Order ("RONR (10th ed.)"), apply. See Op. Att'y Gen. 2006-034; see also Op. Att'y Gen. 95-152 (citing 62 C.J.S. Municipal Corporations § 232(a)); and 62 C.J.S. Municipal Corporations § 232(a) (Supp. 2004).
There is no specific rule of parliamentary procedure that specifies an item may be placed on an agenda for "discussion only." Conversely, there is no general prohibition on making a parliamentary motion regarding an issue from an agenda that is being debated. While, standard practices may include the "discussion only" designation, it does not appear that such a designation would prevent a vote on the item when addressed on the agenda. In my opinion, it would be proper, in the absence of local procedural rules, to entertain a substantive motion about an item on an agenda designated "discussion only."
A second issue raised by your question is whether there is a conflict of interest for the Mayor to preside over the city council meeting and "call a vote" while an issue of her personal pecuniary interest is under discussion. Generally speaking, the Mayor presides over city council meetings as ex officio president of the city council. A.C.A. §14-43-501(b)(1)(A).
One of my predecessors described the common law conflict of interest as follows:
[I]t has been stated that the phrase "conflict of interest," when used to suggest disqualification of a public official from performing his or her duties, generally refers to "a clash between the public interest and the private pecuniary interest of the individual concerned." Gardner v. Nashville Housing Auth. of Metro. Gov't of Nashville and Davidson County, Tennessee, 514 F.2d 38 (6th Cir. 1975). The "conflict of interest theory" is based "on the fact that an individual occupying a public position uses the trust imposed in him and the position he occupies to further his own personal gain. It is the influence he exerts in his official position to gain personally in spite of his official trust which is the evil the law seeks to eradicate." City of Coral Gables v. Weksler, 164 So.2d 260, 263 (Fla.App. 1964). The editors of American Jurisprudence have stated the following with regard to conflicts of interest for public officials:
A public officer owes an undivided duty to the public whom he serves, and is not permitted to place himself in a position which will subject him to conflicting duties or expose him to the temptation of acting in any manner other than in the best interests of the public. In other words, a public official may not use his official power to further his own interest.
63A Am. Jur.2d Public Officers and Employees § 321 (1984).
This office has also addressed in previous attorney general opinions the subject of conflicts of interest for public officials. In Op. Att'y Gen. No. 90-160, the question was posed as to whether it would represent a conflict of interest for members of the Advertising and Promotion Commission, who were also members of the Chamber of Commerce Executive Committee, to vote on awarding a contract for services to the chamber; in response to that inquiry, the following was stated:
If the primary benefit of the Commission member's action flows to another with no distinct pecuniary interest to the member, it may reasonably be concluded that the member need not disqualify from voting on the matter. If, however, the contract gives rise to a pecuniary interest of a Commissioner that is distinct from the public interest, a prohibited conflict of interest may result.
See also Op. Att'y Gen. No. 86-267 (stating that, "[g]enerally, an officer would be disqualified from participating in a decision when he has a personal interest which might interfere with the unbiased discharge of his duty to the public.").
Op. Att'y Gen 93-446 at 2-3. Addressing an issue similar to the one you have raised, my predecessor continued stating in pertinent part:
[I]t is my opinion that, if a commission member disqualifies himself or herself from voting on a matter before the commission due to a conflict of interest, that member should also refrain from participation in formal discussions with the applicant which take place prior to the vote. With respect to zoning and planning boards, the following has been stated on this subject: "Where a member has disqualified himself, he must take no part in the hearing or in the process of decision. Withdrawal is not accomplished if the member presides at the hearing but does not vote." 83 Am. Jur. 2d Zoning and Planning § 812 (1992). In my opinion, the rationale behind conflict of interest prohibitions is equally applicable to all forms of participation in the matter before the public body.
Id. at 4 (emphasis added). Based on the foregoing, in my opinion, it was improper for the mayor to preside over the city council's deliberation of her salary, which is an issue of direct pecuniary interest to her.
Question Two: Was it proper to pull a single item, such as the salary of the Mayor, from the budget and call a vote for just that single item?
I regret that I am unable to offer an opinion on this issue. The evaluation of parliamentary procedures is a factually specific determination. The bare description of a "budget" is not sufficient to allow for such an evaluation of the parliamentary actions taken. Under certain circumstances, a parliamentary motion may be subject to a division of the question, see RONR (10th ed.) pp. 261-266, or consideration by paragraph or seriatim, see id. at 266-270, which allows separate consideration of issues raised in a single parliamentary motion as well as possible local procedural rules. Consultation with local counsel is recommended.
Question Three: Was it proper for the Mayor to then vote in order to break the 3-3 deadlock vote of the city council?
In my opinion, while the mayor of a city of the first class in a mayor-council form of government is specifically authorized to cast a vote as ex officio president of the city council "whenever his or her vote is needed to pass any ordinance, bylaw, resolution, order, or motion" pursuant to A.C.A. § 14-43-501(b)(1)(B), it was an improper conflict of interest for the Mayor to vote in the specific instance referenced in your request because the issue directly affected the Mayor's pecuniary interest.
Normally, the Mayor of a city of the first class is authorized to cast his or her vote as the ex officio president of the city council, "when his or her vote is needed to pass any ordinance, bylaw, resolution, order, or motion." A.C.A. § 14-43-501(b)(1)(B).[1]
I should also note that with regard to the setting of municipal salaries, the Arkansas Constitution, Amendment 56, § 4 states:
Compensation of municipal officers and officials shall be fixed by the governing body of the municipality, not to exceed limits which may be established by law.
Id.
The phrase "governing body" has not been defined or interpreted in this context previously. While the governing body of a municipality clearly includes the city council in a mayor-council form of government, it is not clear whether the Mayor, as ex officio president of the city council, would also be considered part of the governing body for purposes of Amendment 56. See, e.g., Ops. Att'y Gen. 95-227 (concluding that the Mayor is part of the "governing body" of a municipality for the purposes of the Arkansas Freedom of Information Act) and 2003-289; but see Op. Att'y Gen 2005-052 (relying on Amendment 56 for the conclusion that only the city council could authorize compensation levels of municipal officers and officials). Even if the Mayor is not considered part of the governing body of the municipality, the General Assembly has granted the Mayor extensive authority to vote when his or her vote is needed to pass "any" ordinance, motion, or other action of the city council. A.C.A. § 14-43-501.
In either event, the Mayor's conduct would be controlled by A.C.A. § 14-43-501 which states that the mayor may vote only when his or her vote is needed to pass an ordinance, resolution, motion or other item before the city council. In the situation described in your request for an opinion, the Mayor's vote would be needed to increase the Mayor's salary. However, the result of this vote is of direct pecuniary interest to the Mayor. This further implicates the common law proscriptions on conflicts of interest.
Under this standard, described more fully in response to Question One above, it would be improper for the Mayor to cast a vote when his or her direct pecuniary interest would be affected.
The General Assembly may abrogate common law principles, but it must be "made plain by the act that such a change in the established law is intended." Hartford Ins. Co. v. Mullinax, 336 Ark. 335, 343,984 S.W.2d 812 (1999). There is no clear indication or explicit language abrogating the common law proscription on conflicts of interest in either Amendment 56 or the applicable Arkansas Code sections, referenced above. Absent a clear statement deviating from the common law by the General Assembly, I must conclude that it was improper for the Mayor to break a tie when the direct pecuniary interest of the Mayor is affected by the outcome.
As a result, the mayor's vote was invalid and Arkansas Supreme Court precedent suggests that the mayor's vote will not be counted to determine whether the motion passed. See Van Hovenberg v. Holman,201 Ark. 370, 373, 144 S.W.2d 718 (1940) ("If Holman was ineligible to vote in favor of granting a permit . . . clearly no permit was granted, unless the issue can be determined by a majority of [the remaining aldermen] voting on the question. . . ."); see also Davis v. City of Jenkins, 314 Ky. 870, 238 S.W.2d 475 (1951) (holding, under laws analogous to Arkansas, that the mayor could not break a tie vote of the city council on the issue of his salary).
Question Four: What is the fiscal responsibility of the mayor to the citizens? The city council did not approve the mayor's salary, the mayor approved this salary by casting her vote as an ex-officio member.
I am uncertain how Question Four differs from the second portion of Question One or Question Three. I refer to my responses to Questions One and Three above.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The Mayor is additionally authorized to vote to establish a quorum at any regular meeting of the city council, which I interpret to mean that the Mayor does not modify the number required for a quorum but may be counted towards a quorum for the purposes of convening the city council. This phrase was added by Act 354 of 2001. Arkansas Code Annotated § 14-43-501 does not limit the authority of the mayor to vote to pass "any ordinance, bylaw, resolution, order, or motion" to regular meetings.